IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No.: CR 15-77 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| ANDRE MICHAEL LAFONTAINE, III, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW, counsel for the Defendant, and hereby submits the following memorandum for sentencing.

### I. Witnesses

The Defendant does not anticipate that he will call any witnesses at sentencing.

### II. Exhibits

The Defendant anticipates that he will file a supplemental memorandum with character letters to offer as exhibits at sentencing.

### III. Issues

Two sentencing issues remain unresolved: (1) whether to award a four-level downward adjustment pursuant to U.S.S.G. § 2A6.1(b)(6); and (2) whether an upward departure is warranted pursuant to § 4A1.3 for under-representation of criminal history.[1] The Defendant also objects to special conditions 4 & 5. DCD 69-1.

---

[1] The Defendant does not make a motion to depart downward from Criminal History Category II based on over-representation of criminal history.

1

A.  THE COURT SHOULD AWARD A FOUR-LEVEL DOWNWARD
    ADJUSTMENT PURSUANT TO U.S.S.G. § 2A6.1(b)(6)

U.S.S.G. § 2A6.1(b)(6) states that: If (A) subsection (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels. Because subsection (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, DCD 68 & 69, the only issue is whether "the offense involved a single instance evidencing little or no deliberation." Here, the Defendant issued an isolated threat which reflected little, if any, deliberation. The Defendant respectfully asserts that the Court should find § 2A6.1(b)(6) applies to the facts *sub judice*.

The phrase "single instance" is not synonymous with the phrase "single threat." *United States v. Humphreys*, 352 F.3d 1175, 1176 (8th Cir. 2003), quoting *United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994). Moreover, the phrase indicates a requirement that there be "both a temporal relationship and a single purpose or scheme." *Id*. Here, because the Defendant's threat stood out (and alone) against the other phone calls he made during that same time period, it was discrete and insular. DCD 63, p's. 9-10, 50-52. As such, the Defendant respectfully submits that the "offense involved a single instance."

The phrase "little or no deliberation" applies "to defendants whose threats are the product of a single impulse, or are a single thoughtless response to a particular event." *Id.*, 352 F.3d at 1177, citing *Sanders*, 41 F.3d at 484. In *Humphreys*, the Eighth Circuit ultimately found that the reduction did not apply to that defendant because he "communicated his threat about burning Bush to different people on different occasions, specifically, in the chat room, by fax to the White House, and in person to three individuals at different times. *Id*. Here, in contrast, the Defendant uttered the threat a single time, to a single audience, and through a single medium of

2

communication. The Defendant's threat was the product of a "single impulse." The Defendant further submits that the threat ("So what I'm telling you for the last fuckin' time is that if his fuckin' writ isn't satisfied or investigated properly, these judges in Eldora are gonna get their fuckin throats cut, you fuckin' niggers better do your fuckin' job.") is also a text-book example of a "single thoughtless response to a particular event." DCD 2.

The United States Probation Office declined to apply the downward adjustment because the Defendant's told law enforcement that he intended the voice mail as a threat because he "wanted action" and that this demonstrates that "...it involved deliberation and was not of a spontaneous nature..." This interpretation of "deliberation" is incorrect. *United States v. Wright-Darrisaw*, 781 F.3d 35 (2nd Cir. 2015). In *Wright-Darrisaw*, the defendant called the White House Comments Line to "voice her displeasure with child custody laws." *Id*., 781 F.3d at 38. During her phone call, she threatened to kill the President. *Id*. The Second Circuit, relying upon *Humphreys* and *Sanders*, remanded the matter for resentencing because in its decision to deny the defendant an adjustment under § 2A6.1(b)(6), the district court "conflated the deliberation involved in making the phone call to the White House with the deliberation involved in communicating the specific threat against the President". *Id*., 781 F.3d at 41.

The Second Circuit reviewed the case law in the other circuits and observed that the courts have generally looked at two factors to determine whether to apply the four-level downward adjustment: "(1) whether, and under what circumstances, the threat itself has been repeated and (2) whether there is evidence of planning or some effort to carry out the threat." *Id*. The Defendant respectfully submits that he never repeated the threat, and that there is no evidence which suggests that he planned or attempted to carry out the threat. Therefore, the

3

Defendant respectfully requests that the Court grant him a four-level downward adjustment pursuant to § 2A6.1(b)(6).

### B. THE COURT SHOULD NOT DEPART UPWARD BECAUSE CRIMINAL HISTORY CATEGORY II ACCURATELY REPRESENTS THE SERIOUSNESS OF THE DEFENDANT'S CRIMINAL HISTORY AND THE LIKELIHOOD THAT THE DEFENDANT WILL COMMIT OTHER CRIMES

Courts may depart upward if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." § 4A1.3. The Presentence Investigation Report (PSR) places the Defendant into criminal history category II based on a criminal history score of 2. PSR ¶¶ 35, 36. The Defendant denies that his criminal history categorization either substantially under-represents his criminal history or the likelihood that he will commit other crimes.

#### 1. Criminal History Category II Does Not Substantially Under-Represent The Seriousness Of The Defendant's Criminal History

The Defendant acknowledges his criminal history. However, his criminal history is not so lengthy that Category II under-represents its seriousness. The PSR reflects that, at least within the State of Iowa, he is only a misdemeanant. Importantly, none of his criminal convictions actually involve the infliction of physical injury. This is not to say that his two convictions for Operating While Intoxicated (OWI) do not carry the risk of injury (or even death) to others. But, it is to say that because each of his OWI convictions produced a scored criminal history point, that Category II adequately represents the seriousness of the Defendant's criminal history.

4

The Defendant does not deny that he has had extensive contact with law enforcement. But, the vast majority of that contact has been with the Defendant in the role of victim or at least complainant. The Defendant also points out that none of the criteria in § 4A1.3(a)(2) appear to apply to him. As such, the Defendant believes that the Court may sentence him to a sufficient period of imprisonment within his advisory guideline range, and that a departure upward would result in a sentence greater than necessary to achieve the goals of 18 U.S.C. § 3553(a). Alternatively, should the Court determine that criminal history category II substantially under-represents the seriousness of his criminal history, the Defendant respectfully suggests that no more than an upward departure of one column into criminal history category III is warranted.

## 2. Criminal History Category II Does Not Substantially Under-Represent The Likelihood That The Defendant Will Commit Further Crimes

The Defendant iterates his argument that the instant conduct was the product of a "single impulse" or "a single thoughtless response to a particular event." In that light, there is little in the Defendant's criminal history that suggests that he will commit further crimes. That is, while there may be aspects of the Defendant's past that suggest that he may not cease his litigious conduct, there is little reason to believe that the instant offense signals the likely commission of further crimes. Indeed, the Defendant respectfully submits that there is cause to hope that just the opposite is likely.

The PSR reflects that 12 days is the longest period of incarceration ever served by the Defendant. PSR ¶ 32. The Defendant argues that because a sentence within the advisory range will result in a period of incarceration many times greater than even the sum total of all of his previous incarcerations, that criminal history category II does not substantially under-represent the likelihood that he will commit further crimes. *See also United States v. Qualls*, 373 F. Supp.

873, 877 (E.D. Wis. 2005) (observing, generally, that a shorter period of imprisonment is appropriate for a defendant who has not previously served a lengthy period of incarceration).

  C. <u>THE COURT SHOULD DECLINE TO IMPOSE THE SPECIAL CONDITIONS THAT THE DEFENDANT BE PLACED ONTO ELECTRONIC MONITORING AND THAT THE DEFENDANT MUST RESIDE IN A RESIDENTIAL REENTRY CENTER FOR A PERIOD OF UP TO 180 DAYS FOLLOWING HIS RELEASE FROM IMPRISONMENT</u>

Sentencing courts have the authority to impose conditions it determines to be necessary, provided the condition does not offend the limits put forth in 18 U.S.C. § 3583(d), specifically, the conditions must "(1) [be] reasonably related to the pertinent § 3553(a) sentencing factors, (2) involve no greater deprivation of liberty than reasonably necessary for the purposes set forth in §3553(a), and (3) [be] consistent with any pertinent policy statements issued by the United States Sentencing Commission." *United States v. Mefford*, 711 F.3d 923, 926 (8th Cir. 2013).

  1. <u>Electronic Monitoring</u>

The Defendant respectfully argues that the § 3553(a) sentencing factors do not justify electronic monitoring of his whereabouts. Nothing in the Defendant's background suggests that he has such a problem with going somewhere that he is not supposed to go that electronic monitoring of his movements is necessary. In fact, there is nothing in the record that indicates that the Defendant had any violations the one time that he has been placed on probation. ¶ PSR 32. Nor is there anything about his criminal history that indicates that tracking him with a satellite is necessary. Whatever concerns there may be with the Defendant, it is difficult to see how electronically monitoring his location is necessary to address those concerns. The Defendant respectfully further argues that the special conditions that impose a search provision,

6

and a no contact order with the victim of the instant offense sufficiently address the purposes of § 3553(a), and that any greater deprivation of liberty is greater than necessary.

### 2. Residential Reentry Center

The Defendant respectfully believes that the § 3553(a) factors do not support placement into a residential reentry center upon his release from imprisonment. The Defendant, at 36 years of age, is not the sort of young man who might require such placement. That the Defendant has a high school diploma and, when not otherwise preoccupied, a consistent history of employment further undermines the need to place him into a setting that is any more restrictive than absolutely necessary. Placement into a residential reentry center is also not justified in light of the Defendant's history of living in a stable environment, his mother's house. PSR ¶ 48. Finally, this special condition is also unnecessary given the special condition that the Defendant participate in a mental health evaluation and/or treatment program.

## IV. Conclusion

For the reasons set forth above, the Defendant submits that he should receive a four-level downward adjustment pursuant to § 2A6.1(b)(6). The Defendant also objects to any upward departure for under-representation in his criminal history category. Finally, the Defendant objects to the imposition of special conditions that require his placement onto electronic home monitoring and into a residential reentry center.

FEDERAL DEFENDER'S OFFICE
320 Third Street SE, Suite 200
Cedar Rapids, IA 52401-1542
TELEPHONE: (319) 363-9540
TELEFAX: (319) 363-9542


BY: /s/ Christopher J. Nathan
CHRISTOPHER J. NATHAN
christopher_nathan@fd.org
ATTORNEY FOR DEFENDANT,
ANDRE LAFONTAINE


cc: U.S. Attorney's Office
U.S. Probation Office


**Certificate of Service**

I served a copy of this document on the attorneys of record of all parties as follows:

1. Method of service:    ( x ) electronic mail

2. Date served:   January 21, 2016

I declare that the statements above are true to the best of my information, knowledge, and belief.

By:  /s/ K. Jensen