IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA,   )
                       )
          Plaintiff,   )
                       )
   VS.                )   CR 15-77
                       )
ANDRE LAFONTAINE III,    )   (OPENING STATEMENTS)
                       )
          Defendant.   )

APPEARANCES:

ATTORNEY RICHARD L. MURPHY, Assistant U.S. Attorney, 111 Seventh Avenue S.E., Box 1, Cedar Rapids, Iowa 52401, appeared on behalf of the United States.

ATTORNEY CHRISTOPHER J. NATHAN, of the Federal Public Defender's Office, 320 Third Street S.E., Suite 200, Cedar Rapids, Iowa 52401-1804, appeared on behalf of the Defendant.

EXCERPT OF THE JURY TRIAL PROCEEDINGS,

HELD BEFORE THE HON. LINDA R. READE,

on the 14th day of October, 2015, at 111 Seventh Avenue

S.E., Cedar Rapids, Iowa, commencing at 10:48 a.m., and

reported by Patrice A. Murray, Certified Shorthand

Reporter, using machine shorthand.

Transcript Ordered: 3/28/16
Transcript Completed: 4/15/16

Patrice A. Murray, CSR, RPR, RMR, FCRR
United States District Court
111 Seventh Avenue S.E., Box 4
Cedar Rapids, Iowa 52401-2101
(319) 286-2338

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 1 of 28

```
 1              (The following was held in open court.)
 2              THE CLERK:  In Criminal Matter 15-77, United
 3    States of America versus Andre Michael LaFontaine III, on
 4    for trial.
 5         Counsel, please state your appearances.
 6              MR. MURPHY:  Richard Murphy, Assistant United
 7    State's Attorney for the United States.
 8              MR. NATHAN:  For Mr. LaFontaine, Christopher
 9    Nathan.
10              THE COURT:  And Mr. LaFontaine, of course, is
11    personally present.
12         We're outside the presence of the jury for the
13    purpose of taking up anything that may have occurred
14    since last we were together yesterday.  The jury will be
15    reporting in about -- at about 11:00.  It would be my
16    plan to go ahead and greet them, of course, and then
17    begin by reading the preliminary jury instructions and
18    having Mr. Murphy read the indictment to the jury.
19         Then the issue becomes, are you ready to make your
20    opening statements?  Are you, Mr. Murphy?
21              MR. MURPHY:  I will be, Your Honor, yes.
22              MR. NATHAN:  Yes, Your Honor.
23              THE COURT:  Okay.  Because I didn't want to
24    catch you short because we kind of talked about a
25    different timeline yesterday.
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 2 of 28

         1          All right.  So, then, I think after the openings,
         2    we'll adjourn for lunch and then, when we come back,
         3    we'll start the evidence.
         4          Is that acceptable to you, Mr. Murphy?
         5                MR. MURPHY:  It is, Your Honor.
         6                THE COURT:  Mr. Nathan?
         7                MR. NATHAN:  Yes, Your Honor.
         8                THE COURT:  All right.  One thing that I think
         9    we need to add to the instructions is a 404(b)
        10    instruction.  And Mr. Umsted is putting that together and
        11    he'll give you that to look at, and you can tweak it or
        12    talk about it.
        13          It also may be, and I leave this to you, that when
        14    the audio recordings made by the defendant -- if they're
        15    offered, come in, we may need to instruct the jury on the
        16    use of those.  And so here's a preliminary thought I have
        17    on that, and I'll have it typed and give it to you in
        18    advance, but it would say something like this:  You have
        19    heard evidence from audio -- or you have heard audio
        20    recordings made by the defendant -- I should -- okay.
        21          You have heard audio recordings of conversations
        22    defendant had with various persons.  The recordings have
        23    been admitted for the limited purpose of providing
        24    evidence of the defendant's state of mind.  You may not
        25    consider the audio recordings for the truth of their

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 3 of 28

1 contents.  You should give this evidence the weight and

2 value you believe it is entitled to receive.

3     MR. MURPHY:  Well, Your Honor, respectfully, I

4 continue to object to the admission of those.  I don't

5 object to that instruction, but I'm not sure -- I mean,

6 my objection is I don't believe it's "state of mind"

7 because it has nothing to do with the instant threat,

8 which is, as I understand, what the "state of mind" would

9 be relevant to, but it goes more towards character for

10 peacefulness or character for not being an agitated

11 person, and I had understood there was not going to be

12 character evidence.

13     So if it -- if it's coming in, I believe it's --

14 it's more appropriately character, and I objected to that

15 before, but I -- and I don't have the character

16 instruction here in front of me, but it seems to me it's

17 character for peacefulness is what it's being offered

18 for.

19     THE COURT:  Well -- and Mr. Nathan, correct me

20 if I'm wrong, but I'm understanding that where you're

21 going on this is that your client became increasingly --

22 as he pursued his alleged rights, he became more and more

23 frustrated and that what he said on this tape was a

24 culmination of a growing frustration.

25     MR. NATHAN:  So the government, I believe, is

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 4 of 28

1  going to present a theory that the defendant grew

2  frustrated with the way the government was handling his

3  various legal claims --

4            THE COURT:  Right.

5            MR. NATHAN:  -- and the threat was to sort of

6  cause them to act.  And we believe that examples of his

7  other interactions with government officials is simply

8  relevant to rebut that theory, Your Honor.

9            MR. MURPHY:  But in what way?  I mean, I guess

10 I don't understand --

11           MR. NATHAN:  Sure.

12           MR. MURPHY:  -- how it's not character

13 evidence.

14           MR. NATHAN:  Well, it's not because we're not

15 admitting, for example, the audio recording between

16 Mr. LaFontaine and Mr. DeYoung for its truth.  As I said

17 last week, and I believe as is reflected in Your Honor's

18 order, we're simply admitting it for Mr. LaFontaine's

19 tone and that he was not frustrated, thereby disproving

20 the government's theory of motive.

21           MR. MURPHY:  But whether he was frustrated or

22 not on another call is totally irrelevant.  That's like

23 saying a drug dealer didn't deal drugs on Tuesday,

24 therefore, he's not guilty of dealing drugs on Wednesday.

25           MR. NATHAN:  Well, I'm sorry, the government's

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 5 of 28

1  theory appears to be that Mr. LaFontaine's frustration

2  level has been increasing since November 28th of 2010

3  when he was originally arrested for the OWI.  And I

4  believe the government is going to present evidence that

5  over the course of the last approximately five years,

6  that his frustration level has been gradually increasing,

7  culminating in the alleged threat that was left in the

8  form of a voicemail message from Washington, D.C., on

9  July 20th of this year.

10     It is relevant that his frustration level, in our

11  opinion, never even approached the level that would

12  result in the issuance of a threat because, for example,

13  he has spoken with other government officials in a tone

14  that is entirely inconsistent with having any sort of

15  level of frustration toward the government.

16          MR. MURPHY:  Well, not in his call with

17  Mr. Tomlinson, which you don't intend to play, but --

18  anyhow, I just think we're going far afield from the

19  threat in the case, but --

20          MR. NATHAN:  Your Honor, I had spoken to the

21  government during the break between voir dire and this

22  trial conference, and I had indicated that at this point

23  I don't believe that we plan to admit the audio recording

24  between Agent Tomlinson and Mr. LaFontaine, and I was

25  actually hoping to ask Deputy Marshal Bonifazi just a

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 6 of 28

couple of questions, because after Deputy Marshal

Bonifazi interviewed Mr. LaFontaine in January of 2014,

Mr. LaFontaine then sent Deputy Marshal Bonifazi a copy

of an audio recording between Mr. LaFontaine and

Mr. DeYoung from March of 2013, which predated the

alleged threat against Mr. DeYoung by approximately

seven months.  And instead of admitting the audio

recording itself, I would seek just to ask Mr. Bonifazi a

couple of questions about whether -- after receiving the

audio recording from Mr. LaFontaine, did he have the

opportunity to listen to it, and then elicit testimony

regarding Mr. LaFontaine's tone during the audio

recording from Deputy Marshal Bonifazi.  That way there

would be really no risk of undue prejudice to the

government because it would be limited.

       THE COURT:  And so you wouldn't offer the

recordings anyway, so I'm going in the wrong direction.

       MR. NATHAN:  Well, I'm -- I'm just trying to

simplify it because --

       THE COURT:  Sure.

       MR. NATHAN:  -- if we admit, you know, a 15-,

20-minute audio recording of conversation between

Mr. LaFontaine and Mr. DeYoung, it sort of -- might then

implicate or trigger concerns the government has, but if

we limit it simply to one question or two of Deputy

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 7 of 28

1  Marshal Bonifazi, you know, regarding Mr. LaFontaine's

2  tone, then it would be admitted strictly for that purpose

3  and there would be no danger that it was being admitted

4  for character or anything else.

5       THE COURT:  What do you think about that,

6  Mr. Murphy?

7       MR. MURPHY:  Well, again, respectfully, you

8  know, I'm ready to get going, but I do still think it is

9  character.  It's character for peacefulness, is what he's

10 saying.  Tone?  What tone?  That it's a peaceful tone,

11 that it's a non-threatening tone, so it's character for

12 peacefulness.  It's either 404(b) or it's 608 -- or not

13 608, but it's character.  And I just -- I mean, if we're

14 going to get into character, then I would want to ask the

15 witness, well, are you aware of when he -- these other

16 occasions when he's made threats to these other people,

17 and then there we go.

18    So I think I'd be entitled to do it if it's

19 character, which is sort of why I'm trying to determine

20 exactly what we're calling it from a legal standpoint,

21 because I do believe that, while I may not be able to

22 produce extrinsic evidence, if it is character, which

23 obviously I think it is, then I'm entitled to make

24 inquiry as to other instances where his character was not

25 peaceful.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 8 of 28

```
 1          THE COURT:  Well, I kind of misunderstood, I

 2   guess, as to the direction that the defense was going.

 3   And so I think that under the theory -- and we'll see how

 4   the evidence develops.  We're not going to get to

 5   Officer -- to our Deputy Marshal Bonifazi today -- or

 6   this morning, I should say, so let me look at this again

 7   after lunch and see.

 8       It could well be character evidence.  In which case,

 9   if you get into it, then I think the other threats -- who

10   was the other threat to, alleged threat to?  I can't

11   place that person's name.

12          MR. MURPHY:  Well, there have been a few, Your

13   Honor.  And again, it depends on how you characterize the

14   previous incidents, but there's one where the defendant

15   had moved in limine, Gregory Ogaard, in which the

16   defendant left another voicemail, "I'll tell you" --

17   "Greg, I'll tell you one last time, keep your

18   relationship with Stephanie professional or we'll have

19   physical problems, and this is not a threat but a

20   promise."

21       He -- there's allegations that he made

22   threatening -- was threatening other people back in 1998,

23   which I don't know if I'll go into that, but when he was

24   in the lockup at the jail on his OWI charge, he's making

25   statements to the recorder, which is up on the wall,
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 9 of 28

1    "Which one of you guys want to take me on, one-on-one, no

2    weapons?"  I mean, he's -- and he's -- he's making other

3    statements to the law enforcement officers as he sits

4    there.

5         And there are other situations, but -- I really

6    prefer not to get into that, that type of a tit for tat,

7    and I won't, but I'm just saying there are a lot of other

8    things here that this could lead to, at least an inquiry.

9         But I just -- to answer your question, it was that

10   Ogaard, which was the one that the defendant, I think,

11   had referenced in his motion in limine.

12            THE COURT:  All right.  And that is a -- it

13   does not sound as though that had to do with working

14   through the allegations that he was arrested and there

15   was unlawful force used in the arrest.  It's a totally

16   separate matter, correct?

17            MR. MURPHY:  Yes, I think it was --

18            THE COURT:  A personal relationship.

19            MR. MURPHY:  -- a personal relationship-type

20   thing.

21            THE COURT:  Yeah.  Okay.  All right.

22       All right.  Well, let's talk about it and think

23   about it a little bit more, but for now, let's have the

24   jury come in.  And I don't have a seating chart for the

25   jury, but hopefully that's on its way up, and we'll get

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 10 of 28

1  started.

2       (Whereupon, the jury entered the courtroom.)

3           THE COURT:  Good morning.  Please be seated.

4       Good morning, members of the jury.  We're on the

5  record in United States of America versus Andre

6  LaFontaine III.  My name is Linda Reade, and I'm the

7  Chief Judge of the Northern District of Iowa.

8       You had the pleasure to work with our Chief

9  Magistrate Judge, Jon Scoles, this morning during jury

10 selection.  He frequently helps me pick juries so that I

11 can be working on other things while you are being

12 selected, and I appreciate the work that he does in that

13 connection.  As you can tell, he's very thorough and very

14 much to the point, doesn't waste anybody's time.

15      So welcome to jury service.  And at this time, I'm

16 going to ask Mr. Umsted, who is one of my law clerks, to

17 place this jury under oath.  So will you please rise and

18 raise your right hands.

19      (Whereupon, the jury was sworn by the clerk.)

20          THE COURT:  Please be seated.

21      Members of the jury, just a quick overview.  In the

22 courtroom, you'll be working again with Patrice Murray,

23 the court reporter.  It's her responsibility to take down

24 everything that's said in the courtroom.  And so if

25 somebody doesn't speak up or they don't use their

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 11 of 28

1   microphones, you'll hear her ask them to do so so that
2   she can do her job.
3       Zane Umsted is my law clerk, one of several that
4   work for me.  He's an honor's graduate from the
5   University of Iowa Law School.  He's a lawyer, and just
6   passed the bar in -- was that North Carolina?
7           THE CLERK:  Yes.
8           THE COURT:  North Carolina, so he's the real
9   deal.  And he'll be helping me during this trial on a
10  variety of fronts, working with you and helping me keep
11  the case on track and keeping things organized.
12      We will be in session this morning for probably a
13  half hour, 45 minutes.  Then I'm going to send you to
14  lunch, and we're going to start the evidence this
15  afternoon.  We will this afternoon have a midafternoon
16  break, and you should plan that you'd be ready to go home
17  between 4:30 and 5:00 depending upon where we are.
18      I don't know if all the evidence will come in today.
19  If not, and certainly for deliberations, you have to be
20  here tomorrow.  I don't know exactly what tomorrow's
21  schedule will be, but as the day goes on, I'll be able to
22  give you some idea of what you should plan.
23      The jury seats that you're in were designed to be
24  comfortable and to be helpful to jurors who are taking
25  notes and sitting for long periods of time.  Adjust your

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 12 of 28

1  chair as you like it.  You'll see there's a writing

2  surface off to your right that you can pull up.

3      When we start the evidence, the screens that are in

4  front of you pop up.  You'll see the evidence on the big

5  screen if the lawyers project it, and then you can also

6  look on your little screens if that's more convenient to

7  you.  So get comfortable with your surroundings.

8      Judge Bennett, my colleague in Sioux City, is very

9  proud of the cup holders, because for years our jurors

10  were trying not to spill and putting things down, and so

11  he insisted on the cup holders, which is a good plan on

12  his part.

13      To start the trial today, we're going to read the

14  preliminary instructions together.  Any time I give you

15  instructions of any length, they'll be in writing and

16  each of you will have your own copy.  Sometimes during

17  the trial I may give you oral instructions and then they

18  won't be in writing.

19      So the first thing that we're going to do today is

20  to read the preliminary jury instructions.  Feel free to

21  follow along on your own copy.

22      (Whereupon, the jury instructions and indictment

23  were read.)

24          THE COURT:  Members of the jury, you may wish

25  to put your instructions aside at this point and get

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 13 of 28

1  ready to listen to the opening statements, if the

2  attorneys wish to make them.

3       And, Mr. Murphy, are you ready to make your opening

4  statement on behalf of the United States?

5            MR. MURPHY:  I am, Your Honor.

6            THE COURT:  You may proceed.

7            MR. MURPHY:  Thank you.

8       May it please the Court, counsel, ladies and

9  gentlemen of the jury.  You heard the indictment, and I'm

10  not going to go and re-read the whole thing to you, but

11  the purpose of an opening statement is for me to tell you

12  what I believe the witnesses and the evidence will be in

13  this case.  You'll then hear the evidence -- or if the

14  defense wishes to make an opening statement, you'll hear

15  that, and then you'll hear the evidence, and then you'll

16  have an opportunity to deliberate in this matter.

17       Now, as we talked about in voir dire, the evidence

18  is going to come from the witness stand and, in this

19  case, there will be a recording, and you're going to hear

20  that recording.  You've already heard what the allegation

21  is in the indictment, but the evidence that you're going

22  to hear from that witness stand is the recording, the

23  voicemail that the defendant left at the Department of

24  Justice.  The defendant says, "Yeah, my name is Andre

25  Michael LaFontaine III."  It's the defendant.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 14 of 28

1    You'll hear that the defendant made that call from

2  his cell phone.  You'll see the record from his cell

3  phone showing that the call was made on the date and on

4  the time -- or on the date that's alleged here.

5    You're also going to hear from the witness at the

6  Department of Justice who collected that voicemail from

7  the Department of Justice.  You'll hear that, yeah, the

8  voicemail is what was received at the Department of

9  Justice at the Office of Professional Responsibility.

10    You're going to hear from a judge who presided over

11  a state case, criminal case, that the defendant had some

12  charges in state court and was convicted, and you'll hear

13  that the defendant was upset about being convicted of

14  those charges.  And the defendant then undertook a number

15  of actions to try to overturn the conviction and to try

16  to re-address what he believed were some wrongs.

17    You'll hear the defendant pursued appeals with the

18  state court on his criminal case.  Those were rejected.

19  You'll hear that the defendant then sued the police.  He

20  sued the Iowa Falls Police Department, the policemen

21  individually.  Those lawsuits were dismissed.  He pursued

22  appeals to the Eighth Circuit Court of Appeals in federal

23  court.  Those appeals were denied.  He pursued appeal

24  with the Supreme Court.  That was denied.  He pursued

25  other letters to other people, to the President of the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 15 of 28

 1    United States, complaining about his conviction and the

 2    way he was treated.  Pursued other claims with other

 3    people.

 4        He then contacted the FBI, wanted the FBI to

 5    initiate a civil rights investigation.  The FBI looked at

 6    the matter and refused to initiate a civil rights

 7    investigation, said there was nothing there.

 8        The defendant then contacted the Department of

 9    Justice in Washington and left the voicemail where he

10    complained about Craig Tomlinson, the FBI agent, and

11    where he threatened, "I'm telling you the last F-ing

12    time, that if this F-ing writ isn't satisfied or

13    investigated properly, these judges in Eldora are going

14    to get their F-ing throats cut."

15        You're going to hear from the judge, the state court

16    judge who presided over his case in Eldora.  You're going

17    to hear from the agent who went out to talk to the

18    defendant.  And you're going to hear the defendant

19    admitted that he made the statement and that he did it

20    intending to threaten.  He wanted to provoke some action

21    by the FBI or by others on his complaints, and that he

22    knew it would be threatening and construed as such by

23    others.

24        That's going to be the evidence.  It's going to go

25    pretty quick.  And after the evidence is done, I'll have

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 16 of 28

```
 1   my opportunity to come back up and to talk to you one
 2   more time, and at that time I'm going to ask you to
 3   return a verdict of guilty against the defendant.
 4        Thank you for your attention.
 5            THE COURT:  Mr. Nathan, would you like to make
 6   an opening statement?
 7            MR. NATHAN:  Yes, Your Honor.  Thank you.
 8            THE COURT:  You may.
 9            MR. NATHAN:  Andre LaFontaine did not leave the
10   voicemail message with the intent to threaten, and
11   Mr. LaFontaine did not leave that voicemail message with
12   the knowledge that it would be viewed as a threat.
13        You will hear evidence over the course of the trial
14   that shows that Mr. LaFontaine's intent with the
15   voicemail message was not to threaten.  You will also
16   hear evidence over the course of the trial that
17   Mr. LaFontaine did not leave that voicemail message with
18   the knowledge that it would be viewed as a threat.
19        You will hear the audio recording.  The audio
20   recording contains profane language, but the
21   circumstantial evidence -- the circumstances surrounding
22   the uttering of that voicemail message will demonstrate
23   that Mr. LaFontaine did not leave that message with
24   either the intent to threaten or with the knowledge that
25   it would be viewed as a threat.
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 17 of 28

       1          You will hear testimony from the federal agent who

       2     interviewed Mr. LaFontaine on July 23rd of this year.

       3     Pay attention to what happened between July 20th, when

       4     the alleged threat was left on the voicemail, and

       5     July 23rd, when the interview was conducted.  Pay

       6     attention to what happened during the interview.  Pay

       7     attention to what was said during the interview.  Pay

       8     special attention to what did not happen during the

       9     interview.  Pay particular attention to what was not said

      10     during the interview.

      11          You'll also hear testimony from a state court judge.

      12     All we ask -- all we ask is that, when you listen to the

      13     state court judge's testimony, that you view it in the

      14     same way as you would any other person.  We only ask

      15     that, when you consider the state court judge's

      16     testimony, that you ask yourselves, does the state court

      17     judge's testimony make sense based on your own life

      18     experiences?

      19          We also expect that you will hear evidence about

      20     statements that Mr. LaFontaine may have made years ago.

      21     We believe that the government will admit these

      22     statements from years ago to show that Mr. LaFontaine

      23     knew that the July 20th voicemail would be viewed as a

      24     threat.  However, these statements from years ago will

      25     actually further demonstrate that Mr. LaFontaine did not

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 18 of 28

1    intend the voicemail as a threat.

2         Mr. LaFontaine sits in front of you presumed

3    innocent.  He will continue to sit in front of you

4    presumed innocent throughout the entirety of the trial.

5    Now, we chose you as jurors because you told us that you

6    would fulfill your oath of service, because you told us

7    that you would hold the government to their burden of

8    proof.  And we chose you as jurors not because you told

9    us that you would force the government to prove to each

10   and every one of you beyond a reasonable doubt that

11   Mr. LaFontaine may have left a voicemail which contained

12   profane language.  We chose you as jurors because you

13   told us that you would force the government to prove to

14   each and every one of you beyond a reasonable doubt not

15   just that a profane voicemail message was left but that

16   it was left with either the intent to threaten or with

17   the knowledge that it would be viewed as a threat.

18        At the end of the trial, I will return to speak to

19   you and I will ask you then to return the only just, the

20   only proper verdict, one of not guilty.

21        Thank you.

22             THE COURT:  Members of the jury, this concludes

23   the opening statements made by the attorneys.  I think,

24   because we're nearing the noon hour, it makes sense for

25   me to give you your lunch break now, and we'll pick up

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 19 of 28

1   the evidence at 1:00.

2       While you are at recess, please remember the

3   admonitions of the Court:  Don't make up your mind yet,

4   you haven't heard any evidence, you haven't heard the

5   instructions on the law, and, of course, you won't have

6   had time to talk to your fellow jurors.

7       You can leave your instructions on your chair.  When

8   you come back from your break, you'll find on your chair

9   an envelope with a pad and pen in it in case you want to

10  take any notes.  You're not required to take notes, but

11  if you want to, those will be on your chair when you

12  return.  And we'll start promptly at 1:00.  See you then.

13          (Whereupon, the jury exited the courtroom.)

14          THE COURT:  Outside the presence of the jury in

15  United States of America versus Andre Michael

16  LaFontaine III, Case 15-77.

17      Anything you want to talk about before we go to

18  lunch?  I just want to clarify here.  If the -- if the

19  evidence comes in of prior measured tone and so on and so

20  forth, and the government says it's character evidence,

21  then I would say it's really not relevant because the

22  reputation or the character for peacefulness is not

23  relevant in this case because the government doesn't have

24  to prove he intended to act on the threats.  Right?

25          MR. NATHAN:  Your Honor, but that's not why

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 20 of 28

```
 1   we're seeking to admit the evidence of the audio
 2   recording.  And if we ask questions regarding the
 3   circumstances of the leaving of the voicemail and what
 4   else occurred, it's not to introduce character evidence.
 5   It's because this case isn't a drug dealing case and
 6   whether he sold drugs on one occasion and whether he
 7   didn't sell drugs on a different occasion, its relevance
 8   as to whether he sold drugs on that first occasion.
 9   We're talking about the defendant's mental state.  And I
10   expect the government to introduce some direct evidence
11   of what Mr. LaFontaine's intent or knowledge was, but
12   with any case that involves the defendant's mental state
13   and proof of intent or knowledge, we're really talking
14   about circumstantial evidence.
15          So the defendant believes that the circumstances,
16   whether they be on July 20th or July 23rd, of the leaving
17   of the voicemail and the interview, whether they be from
18   March 1st of 2013, we're not admitting them for the
19   purpose of demonstrating a peaceful character.  We're
20   admitting them because those circumstances negate the
21   mental state, just as in any other case that involves
22   proof of, you know, what the defendant's thought process
23   was or wasn't.
24                 THE COURT:  Anything else you want to say about
25   that, Mr. Murphy?
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 21 of 28

1        MR. MURPHY:  Well, the only thing, I'm having a

2   hard time -- I mean, this amorphous mental state, under

3   what rule?  I don't know -- I tend to look at things

4   under how is it admissible, under what rule?  I'm

5   thinking this is under the character rules.  If there's

6   some other rule that says that extrinsic evidence --

7   proof of extrinsic evidence, extrinsic acts, is

8   admissible, then, you know, perhaps, but I'm not -- I'm

9   not grasping it at this point.

10        THE COURT:  All right.  Well, let's continue to

11   think about that and see how it comes in.

12        Why don't you be in the courtroom at a quarter to

13   1:00 and be ready to go at 1:00.

14        See you then.

15        MR. NATHAN:  Thank you, Your Honor.

16        (Whereupon, a brief recess was taken.)

17        (This concludes the excerpt of the jury trial

18   proceedings.)

19

20

21

22

23

24

25

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 22 of 28

1      C E R T I F I C A T E

2          I, Patrice A. Murray, a Certified Shorthand
Reporter of the State of Iowa, do hereby certify that at
3   the time and place heretofore indicated, a jury trial was
held before the Honorable Linda R. Reade; that I reported
4   in shorthand the proceedings of said jury trial, reduced
the same to print to the best of my ability by means of
5   computer-assisted transcription under my direction and
supervision, and that the foregoing transcript is a true
6   record of all proceedings had on the taking of said jury
trial at the above time and place.

7

8          I further certify that I am not related to or
employed by any of the parties to this action, and
9   further, that I am not a relative or employee of any
attorney or counsel employed by the parties hereto or
9   financially interested in the action.

10

11      IN WITNESS WHEREOF, I have set my hand this 15th day
of April, 2016.

12

/s/ Patrice A. Murray
13      Patrice A. Murray, CSR, RPR, RMR, FCRR
United States District Court, NDIA
14      111 Seventh Avenue S.E., Box 4
Cedar Rapids, Iowa 52401-2101

15

16

17

18

19

20

21

22

23

24

25

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 23 of 28

## /

**/s** [1] - 23:12

## 1

**1** [1] - 1:10
**10:48** [1] - 1:18
**111** [4] - 1:10, 1:17, 1:24, 23:14
**11:00** [1] - 2:15
**14th** [1] - 1:17
**15** [1] - 7:21
**15-77** [3] - 1:5, 2:2, 20:16
**15th** [1] - 23:10
**1998** [1] - 9:22
**1:00** [4] - 20:1, 20:12, 22:13
**1st** [1] - 21:18

## 2

**20-minute** [1] - 7:22
**200** [1] - 1:12
**2010** [1] - 6:2
**2013** [2] - 7:5, 21:18
**2014** [1] - 7:2
**2015** [1] - 1:17
**2016** [1] - 23:11
**20th** [4] - 6:9, 18:3, 18:23, 21:16
**23rd** [3] - 18:2, 18:5, 21:16
**286-2338** [1] - 1:25
**28th** [1] - 6:2

## 3

**3/28/16** [1] - 1:21
**319** [1] - 1:25
**320** [1] - 1:12

## 4

**4** [2] - 1:24, 23:14
**4/15/16** [1] - 1:21
**404(b** [2] - 3:9, 8:12
**45** [1] - 12:13
**4:30** [1] - 12:17

## 5

**52401** [1] - 1:10
**52401-1804** [1] - 1:13
**52401-2101** [2] - 1:24, 23:14
**5:00** [1] - 12:17

## 6

**608** [2] - 8:12, 8:13

## A

**a.m** [1] - 1:18
**ability** [1] - 23:4
**able** [2] - 8:21, 12:21
**acceptable** [1] - 3:4
**act** [2] - 5:6, 20:24
**action** [2] - 16:20, 23:8, 23:9
**actions** [1] - 15:15
**acts** [1] - 22:7
**add** [1] - 3:9
**address** [1] - 15:16
**adjourn** [1] - 3:2
**adjust** [1] - 12:25
**admissible** [2] - 22:4, 22:8
**admission** [1] - 4:4
**admit** [4] - 6:23, 7:21, 18:21, 21:1
**admitted** [4] - 3:23, 8:2, 8:3, 16:19
**admitting** [5] - 5:15, 5:18, 7:7, 21:18, 21:20
**admonitions** [1] - 20:3
**advance** [1] - 3:18
**afield** [1] - 6:18
**afternoon** [2] - 12:15
**agent** [3] - 16:10, 16:17, 18:1
**Agent** [1] - 6:24
**agitated** [1] - 4:10
**ago** [3] - 18:20, 18:22, 18:24
**ahead** [1] - 2:16
**allegation** [1] - 14:20
**allegations** [2] - 9:21, 10:14
**alleged** [6] - 4:22, 6:7, 7:6, 9:10, 15:4, 18:4
**AMERICA** [1] - 1:3
**America** [3] - 2:3, 11:5, 20:15
**amorphous** [1] - 22:2
**Andre** [5] - 2:3, 11:5, 14:24, 17:9, 20:15
**ANDRE** [1] - 1:6
**answer** [1] - 10:9
**anyhow** [1] - 6:18
**anyway** [1] - 7:17
**appeal** [1] - 15:23
**appeals** [3] - 15:17, 15:22, 15:23
**Appeals** [1] - 15:22
**APPEARANCES** [1] - 1:9
**appearances** [1] - 2:5
**appeared** [2] - 1:11, 1:13
**appreciate** [1] - 11:12
**approached** [1] - 6:11
**appropriately** [1] - 4:14
**April** [1] - 23:11

**arrest** [1] - 10:15
**arrested** [2] - 6:3, 10:14
**aside** [1] - 13:25
**Assistant** [2] - 1:10, 2:6
**assisted** [1] - 23:5
**attention** [6] - 17:4, 18:3, 18:6, 18:7, 18:8, 18:9
**ATTORNEY** [2] - 1:10, 1:12
**attorney** [1] - 23:9
**Attorney** [2] - 1:10, 2:7
**attorneys** [2] - 14:2, 19:23
**audio** [15] - 3:14, 3:19, 3:21, 3:25, 5:15, 6:23, 7:4, 7:7, 7:10, 7:12, 7:22, 17:19, 21:1
**Avenue** [4] - 1:10, 1:17, 1:24, 23:14
**aware** [1] - 8:15

## B

**bar** [1] - 12:6
**based** [1] - 18:17
**became** [2] - 4:21, 4:22
**becomes** [1] - 2:19
**BEFORE** [1] - 1:16
**begin** [1] - 2:17
**behalf** [3] - 1:11, 1:13, 14:4
**believes** [1] - 21:15
**Bennett** [1] - 13:8
**best** [1] - 23:4
**between** [7] - 5:15, 6:21, 6:24, 7:4, 7:22, 12:17, 18:3
**beyond** [2] - 19:10, 19:14
**big** [1] - 13:4
**bit** [1] - 10:23
**Bonifazi** [7] - 6:25, 7:2, 7:3, 7:8, 7:13, 8:1, 9:5
**Box** [3] - 1:10, 1:24, 23:14
**break** [4] - 6:21, 12:16, 19:25, 20:8
**brief** [1] - 22:16
**burden** [1] - 19:7

## C

**Carolina** [2] - 12:6, 12:8
**case** [15] - 6:19, 9:8, 12:11, 14:13, 14:19, 15:11, 15:18, 16:16, 20:9, 20:23, 21:5, 21:12, 21:21
**Case** [1] - 20:16
**catch** [1] - 2:24
**Cedar** [5] - 1:10, 1:13, 1:18, 1:24, 23:14
**cell** [2] - 15:2
**certainly** [1] - 12:19
**Certified** [2] - 1:19, 23:2
**certify** [2] - 23:2, 23:7
**chair** [4] - 13:1, 20:7, 20:8, 20:11

**character** [22] - 4:9, 4:10, 4:12, 4:14, 4:15, 4:17, 5:12, 8:4, 8:9, 8:11, 8:13, 8:14, 8:19, 8:22, 8:24, 9:8, 20:20, 20:22, 21:4, 21:19, 22:5
**characterize** [1] - 9:13
**charge** [1] - 9:24
**charges** [2] - 15:12, 15:14
**chart** [1] - 10:24
**Chief** [2] - 11:7, 11:8
**chose** [3] - 19:5, 19:8, 19:12
**CHRISTOPHER** [1] - 1:12
**Christopher** [1] - 2:8
**Circuit** [1] - 15:22
**circumstances** [4] - 17:21, 21:3, 21:15, 21:20
**circumstantial** [2] - 17:21, 21:14
**City** [1] - 13:8
**civil** [2] - 16:5, 16:6
**claims** [2] - 5:3, 16:2
**clarify** [1] - 20:18
**CLERK** [2] - 2:2, 12:7
**clerk** [2] - 11:19, 12:3
**clerks** [1] - 11:16
**client** [1] - 4:21
**colleague** [1] - 13:8
**collected** [1] - 15:6
**comfortable** [2] - 12:24, 13:7
**coming** [1] - 4:13
**commencing** [1] - 1:18
**complained** [1] - 16:10
**complaining** [1] - 16:1
**complaints** [1] - 16:21
**Completed** [1] - 1:21
**computer** [1] - 23:5
**computer-assisted** [1] - 23:5
**concerns** [1] - 7:24
**concludes** [2] - 19:22, 22:17
**conducted** [1] - 18:5
**conference** [1] - 6:22
**connection** [1] - 11:13
**consider** [2] - 3:25, 18:15
**construed** [1] - 16:22
**contacted** [2] - 16:4, 16:8
**contained** [1] - 19:11
**contains** [1] - 17:20
**contents** [1] - 4:1
**continue** [3] - 4:4, 19:3, 22:10
**convenient** [1] - 13:6
**conversation** [1] - 7:22
**conversations** [1] - 3:21
**convicted** [2] - 15:12, 15:13
**conviction** [2] - 15:15, 16:1
**copy** [3] - 7:3, 13:16, 13:21
**correct** [2] - 4:19, 10:16
**Counsel** [1] - 2:5
**counsel** [2] - 14:8, 23:9
**couple** [2] - 7:1, 7:9

**course** [6] - 2:10, 2:16, 6:5, 17:13, 17:16, 20:5
**COURT** [25] - 1:1, 2:10, 2:23, 3:6, 3:8, 4:19, 5:4, 7:16, 7:20, 8:5, 9:1, 10:12, 10:18, 10:21, 11:3, 11:20, 12:8, 13:24, 14:6, 17:5, 17:8, 19:22, 20:14, 21:24, 22:10
**Court** [6] - 1:23, 14:8, 15:22, 15:24, 20:3, 23:13
**court** [10] - 2:1, 11:23, 15:12, 15:18, 15:23, 16:15, 18:11, 18:13, 18:15, 18:16
**courtroom** [5] - 11:2, 11:22, 11:24, 20:13, 22:12
**CR** [1] - 1:5
**Craig** [1] - 16:10
**Criminal** [1] - 2:2
**criminal** [2] - 15:11, 15:18
**CSR** [2] - 1:23, 23:13
**culminating** [1] - 6:7
**culmination** [1] - 4:24
**cup** [2] - 13:9, 13:11
**cut** [1] - 16:14

**D**

**D.C** [1] - 6:8
**danger** [1] - 8:3
**date** [2] - 15:3, 15:4
**deal** [2] - 5:23, 12:9
**dealer** [1] - 5:23
**dealing** [2] - 5:24, 21:5
**Defendant** [2] - 1:7, 1:13
**defendant** [21] - 3:14, 3:20, 3:22, 5:1, 9:14, 9:16, 10:10, 14:23, 14:24, 14:25, 15:1, 15:11, 15:13, 15:14, 15:17, 15:19, 16:8, 16:18, 17:3, 21:15
**defendant's** [4] - 3:24, 21:9, 21:12, 21:22
**Defender's** [1] - 1:12
**defense** [2] - 9:2, 14:14
**deliberate** [1] - 14:16
**deliberations** [1] - 12:19
**demonstrate** [2] - 17:22, 18:25
**demonstrating** [1] - 21:19
**denied** [2] - 15:23, 15:24
**Department** [6] - 14:23, 15:6, 15:7, 15:8, 15:20, 16:8
**Deputy** [6] - 6:25, 7:1, 7:3, 7:13, 7:25, 9:5
**designed** [1] - 12:23
**determine** [1] - 8:19
**develops** [1] - 9:4
**DeYoung** [4] - 5:16, 7:5, 7:6, 7:23
**different** [2] - 2:25, 21:7
**dire** [2] - 6:21, 14:17

**direct** [1] - 21:10
**direction** [3] - 7:17, 9:2, 23:5
**dismissed** [1] - 15:21
**disproving** [1] - 5:19
**District** [3] - 1:23, 11:7, 23:13
**DISTRICT** [2] - 1:1, 1:1
**done** [1] - 16:25
**doubt** [2] - 19:10, 19:14
**down** [2] - 11:23, 13:10
**drug** [2] - 5:23, 21:5
**drugs** [5] - 5:23, 5:24, 21:6, 21:7, 21:8
**during** [9] - 6:21, 7:12, 11:9, 12:9, 13:16, 18:6, 18:7, 18:8, 18:10

**E**

**Eighth** [1] - 15:22
**either** [3] - 8:12, 17:24, 19:16
**Eldora** [2] - 16:13, 16:16
**elicit** [1] - 7:11
**employed** [2] - 23:8, 23:9
**employee** [1] - 23:8
**end** [1] - 19:18
**enforcement** [1] - 10:3
**entered** [1] - 11:2
**entirely** [1] - 6:14
**entirety** [1] - 19:4
**entitled** [3] - 4:2, 8:18, 8:23
**envelope** [1] - 20:9
**evidence** [35] - 3:3, 3:19, 3:24, 4:1, 4:12, 5:13, 6:4, 8:22, 9:4, 9:8, 12:14, 12:18, 13:3, 13:4, 14:12, 14:13, 14:15, 14:17, 14:21, 16:24, 16:25, 17:13, 17:16, 17:21, 18:19, 20:1, 20:4, 20:19, 20:20, 21:1, 21:4, 21:10, 21:14, 22:6, 22:7
**exactly** [2] - 8:20, 12:20
**example** [2] - 5:15, 6:12
**examples** [1] - 5:6
**EXCERPT** [1] - 1:15
**excerpt** [1] - 22:17
**exited** [1] - 20:13
**expect** [2] - 18:19, 21:10
**experiences** [1] - 18:18
**extrinsic** [4] - 8:22, 22:6, 22:7

**F**

**F-ing** [3] - 16:11, 16:12, 16:14
**Falls** [1] - 15:20
**far** [1] - 6:18
**FBI** [5] - 16:4, 16:5, 16:10, 16:21

**FCRR** [2] - 1:23, 23:13
**Federal** [1] - 1:12
**federal** [2] - 15:22, 18:1
**fellow** [1] - 20:6
**few** [1] - 9:12
**financially** [1] - 12:9
**first** [2] - 13:19, 21:8
**five** [1] - 6:5
**follow** [1] - 13:21
**following** [1] - 2:1
**FOR** [1] - 1:1
**force** [3] - 10:15, 19:9, 19:13
**foregoing** [1] - 23:5
**form** [1] - 6:8
**forth** [1] - 20:20
**free** [1] - 13:20
**frequently** [1] - 11:10
**front** [4] - 4:16, 13:4, 19:2, 19:3
**fronts** [1] - 12:10
**frustrated** [4] - 4:23, 5:2, 5:19, 5:21
**frustration** [5] - 4:24, 6:1, 6:6, 6:10, 6:15
**fulfill** [1] - 19:6

**G**

**gentlemen** [1] - 14:9
**government** [16] - 4:25, 5:2, 5:7, 6:4, 6:13, 6:15, 6:21, 7:15, 7:24, 18:21, 19:7, 19:9, 19:13, 20:20, 20:23, 21:10
**government's** [2] - 5:20, 5:25
**gradually** [1] - 6:6
**graduate** [1] - 12:4
**grasping** [1] - 22:9
**greet** [1] - 2:16
**Greg** [1] - 9:17
**Gregory** [1] - 9:15
**grew** [1] - 5:1
**growing** [1] - 4:24
**guess** [2] - 5:9, 9:2
**guilty** [3] - 5:24, 17:3, 19:20
**guys** [1] - 10:1

**H**

**half** [1] - 12:13
**hand** [1] - 23:10
**handling** [1] - 5:2
**hands** [1] - 11:18
**hard** [1] - 22:2
**hear** [22] - 12:1, 14:13, 14:14, 14:15, 14:19, 14:22, 15:1, 15:5, 15:7, 15:10, 15:12, 15:17, 15:19, 16:15, 16:17, 16:18, 17:13, 17:16, 17:19, 18:1, 18:11, 18:19

**heard** [7] - 3:19, 3:21, 14:9, 14:20, 20:4
**HELD** [1] - 1:16
**held** [2] - 2:1, 23:3
**helpful** [1] - 12:24
**helping** [2] - 12:9, 12:10
**helps** [1] - 11:10
**hereby** [1] - 23:2
**hereto** [1] - 23:9
**heretofore** [1] - 23:3
**hold** [1] - 19:7
**holders** [2] - 13:9, 13:11
**home** [1] - 12:16
**HON** [1] - 1:16
**Honor** [12] - 2:21, 2:22, 3:5, 3:7, 4:3, 5:8, 6:20, 9:13, 14:5, 17:7, 20:25, 22:15
**honor's** [1] - 12:4
**Honor's** [1] - 5:17
**Honorable** [1] - 23:3
**hopefully** [1] - 10:25
**hoping** [1] - 6:25
**hour** [2] - 12:13, 19:24

**I**

**idea** [1] - 12:22
**III** [5] - 1:6, 2:3, 11:6, 14:25, 20:16
**implicate** [1] - 7:24
**IN** [2] - 1:1, 23:10
**incidents** [1] - 9:14
**inconsistent** [1] - 6:14
**increasing** [2] - 6:2, 6:6
**increasingly** [1] - 4:21
**indicated** [2] - 6:22, 23:3
**indictment** [4] - 2:18, 13:22, 14:9, 14:21
**individually** [1] - 15:21
**ing** [3] - 16:11, 16:12, 16:14
**initiate** [1] - 16:5, 16:6
**innocent** [2] - 19:3, 19:4
**inquiry** [2] - 8:24, 10:8
**insisted** [1] - 13:11
**instances** [1] - 8:24
**instant** [1] - 4:7
**instead** [1] - 7:7
**instruct** [1] - 3:15
**instruction** [3] - 3:10, 4:5, 4:16
**instructions** [10] - 2:17, 3:9, 13:14, 13:15, 13:17, 13:20, 13:22, 13:25, 20:5, 20:7
**intend** [2] - 6:17, 19:1
**intended** [1] - 20:24
**intending** [1] - 16:20
**intent** [6] - 17:10, 17:14, 17:24, 19:16, 21:11, 21:13
**interactions** [1] - 5:7
**interested** [1] - 23:9
**interview** [2] - 18:5, 18:6,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript*
Case 1:15-cr-00077-CJW-MAR  Document 91  Filed 04/15/16  Page 25 of 28

18:7, 18:9, 18:10, 21:17
**interviewed** [2] - 7:2, 18:2
**introduce** [2] - 21:4, 21:10
**investigated** [1] - 16:13
**investigation** [2] - 16:5, 16:7
**involves** [2] - 21:12, 21:21
**IOWA** [1] - 1:1
**Iowa** [9] - 1:10, 1:13, 1:18, 1:24, 11:7, 12:5, 15:20, 23:2, 23:14
**irrelevant** [1] - 5:22
**issuance** [1] - 6:12
**issue** [1] - 2:19
**itself** [1] - 7:8

**J**

**jail** [1] - 9:24
**January** [1] - 7:2
**job** [1] - 12:2
**Jon** [1] - 11:9
**judge** [5] - 15:10, 16:15, 16:16, 18:11
**Judge** [3] - 11:7, 11:9, 13:8
**judge's** [3] - 18:13, 18:15, 18:17
**judges** [1] - 16:13
**July** [7] - 6:9, 18:2, 18:3, 18:5, 18:23, 21:16
**juries** [1] - 11:10
**jurors** [6] - 12:24, 13:9, 19:5, 19:8, 19:12, 20:6
**jury** [26] - 2:12, 2:14, 2:17, 2:18, 3:15, 10:24, 10:25, 11:2, 11:4, 11:9, 11:15, 11:17, 11:19, 11:21, 12:23, 13:20, 13:22, 13:24, 14:9, 19:22, 20:13, 20:14, 22:17, 23:3, 23:4, 23:6
**JURY** [1] - 1:15
**Justice** [5] - 14:24, 15:6, 15:7, 15:9, 16:9

**K**

**keep** [2] - 9:17, 12:10
**keeping** [1] - 12:11
**kind** [2] - 2:24, 9:1
**knowledge** [6] - 17:12, 17:18, 17:24, 19:17, 21:11, 21:13

**L**

**ladies** [1] - 14:8
**LaFontaine** [23] - 2:3, 2:8, 2:10, 5:16, 6:24, 7:2, 7:3, 7:4, 7:10, 7:23, 11:6, 14:25, 17:9, 17:11, 17:17, 17:23, 18:2, 18:20, 18:22, 18:25, 19:2,

19:11, 20:16
**LAFONTAINE** [1] - 1:6
**LaFontaine's** [6] - 5:18, 6:1, 7:12, 8:1, 17:14, 21:11
**language** [2] - 17:20, 19:12
**last** [5] - 2:14, 5:17, 6:5, 9:17, 16:11
**law** [4] - 10:3, 11:16, 12:3, 20:5
**Law** [1] - 12:5
**lawsuits** [1] - 15:21
**lawyer** [1] - 12:5
**lawyers** [1] - 13:5
**lead** [1] - 10:8
**least** [1] - 10:8
**leave** [6] - 3:13, 17:9, 17:11, 17:17, 17:23, 20:7
**leaving** [1] - 21:3, 21:16
**left** [8] - 6:7, 9:16, 14:23, 16:9, 18:4, 19:11, 19:15, 19:16
**legal** [2] - 5:3, 8:20
**length** [1] - 13:15
**letters** [1] - 15:25
**level** [5] - 6:2, 6:6, 6:10, 6:11, 6:15
**life** [1] - 18:17
**limine** [2] - 9:15, 10:11
**limit** [1] - 7:25
**limited** [2] - 3:23, 7:15
**LINDA** [1] - 1:6
**Linda** [2] - 11:6, 23:3
**listen** [3] - 7:11, 14:1, 18:12
**lockup** [1] - 9:24
**look** [4] - 3:11, 9:6, 13:6, 22:3
**looked** [1] - 16:5
**lunch** [5] - 3:2, 9:7, 12:14, 19:25, 20:18

**M**

**machine** [1] - 1:20
**Magistrate's** [1] - 11:9
**March** [2] - 7:5, 21:18
**Marshal** [6] - 6:25, 7:1, 7:3, 7:13, 8:1, 9:5
**Matter** [1] - 2:2
**matter** [3] - 10:16, 14:16, 16:6
**mean** [5] - 4:5, 5:9, 8:13, 10:2, 22:2
**means** [1] - 23:4
**measured** [1] - 20:19
**members** [4] - 11:4, 11:21, 13:24, 19:22
**mental** [4] - 21:9, 21:12, 21:21, 22:2
**message** [8] - 6:8, 17:10, 17:11, 17:15, 17:17, 17:22, 17:23, 19:15

**Michael** [3] - 2:3, 14:25, 20:15
**microphones** [1] - 12:1
**midafternoon** [1] - 12:15
**might** [1] - 7:23
**mind** [4] - 3:24, 4:6, 4:8, 20:3
**minutes** [1] - 12:13
**misunderstood** [1] - 9:1
**months** [1] - 7:7
**morning** [5] - 9:6, 11:3, 11:4, 11:9, 12:12
**motion** [1] - 10:11
**motive** [1] - 5:20
**moved** [1] - 9:15
**MR** [30] - 2:6, 2:8, 2:21, 2:22, 3:5, 3:7, 4:3, 4:25, 5:5, 5:9, 5:11, 5:12, 5:14, 5:21, 5:25, 6:16, 6:20, 7:18, 7:21, 8:7, 9:12, 10:17, 10:19, 14:5, 14:7, 17:7, 17:9, 20:25, 22:1, 22:15
**MURPHY** [16] - 1:10, 2:6, 2:21, 3:5, 4:3, 5:9, 5:12, 5:21, 6:16, 8:7, 9:12, 10:17, 10:19, 14:5, 14:7, 22:1
**Murphy** [7] - 2:6, 2:18, 2:20, 3:4, 8:6, 14:3, 21:25
**Murray** [6] - 1:19, 1:23, 11:22, 23:2, 23:12, 23:13

**N**

**name** [3] - 9:11, 11:6, 14:24
**Nathan** [4] - 2:9, 3:6, 4:19, 17:5
**NATHAN** [16] - 1:12, 2:8, 2:22, 3:7, 4:25, 5:5, 5:11, 5:14, 5:25, 6:20, 7:18, 7:21, 17:7, 17:9, 20:25, 22:15
**NDIA** [1] - 23:13
**nearing** [1] - 19:24
**need** [2] - 3:9, 3:15
**negate** [1] - 21:20
**never** [1] - 6:11
**non** [1] - 8:11
**non-threatening** [1] - 8:11
**noon** [1] - 19:24
**North** [2] - 12:6, 12:8
**NORTHERN** [1] - 1:1
**Northern** [1] - 11:7
**notes** [3] - 12:25, 20:10
**nothing** [2] - 4:7, 16:7
**November** [1] - 6:2
**number** [1] - 15:14

**O**

**oath** [2] - 11:17, 19:6
**object** [2] - 4:4, 4:5
**objected** [1] - 4:14
**objection** [1] - 4:6

**obviously** [1] - 8:23
**occasion** [3] - 21:6, 21:7, 21:8
**occasions** [1] - 8:16
**occurred** [2] - 2:13, 21:4
**October** [1] - 1:17
**OF** [3] - 1:1, 1:3, 1:15
**offer** [1] - 7:16
**offered** [2] - 3:15, 4:17
**Office** [2] - 1:12, 15:9
**Officer** [1] - 9:5
**officers** [1] - 10:3
**officials** [2] - 5:7, 6:13
**Ogaard** [2] - 9:15, 10:10
**one** [15] - 3:8, 7:25, 9:14, 9:17, 10:1, 10:10, 11:16, 12:3, 17:1, 19:10, 19:14, 19:20, 21:6
**one-on-one** [1] - 10:1
**open** [1] - 2:1
**OPENING** [1] - 1:6
**opening** [7] - 2:20, 14:1, 14:3, 14:11, 14:14, 17:6, 19:23
**openings** [1] - 3:1
**opinion** [1] - 6:11
**opportunity** [3] - 7:11, 14:16, 17:1
**oral** [1] - 13:17
**order** [1] - 5:18
**Ordered** [1] - 1:21
**organized** [1] - 12:11
**originally** [1] - 6:3
**outside** [2] - 2:12, 20:14
**overturn** [1] - 15:15
**overview** [1] - 11:21
**OWI** [2] - 6:3, 9:24
**own** [3] - 13:16, 13:21, 18:17

**P**

**pad** [1] - 20:9
**part** [1] - 13:12
**particular** [1] - 18:9
**parties** [2] - 23:8, 23:9
**passed** [1] - 12:6
**Patrice** [6] - 1:19, 1:23, 11:22, 23:2, 23:12, 23:13
**pay** [5] - 18:3, 18:5, 18:6, 18:7, 18:9
**peaceful** [3] - 8:10, 8:25, 21:19
**peacefulness** [5] - 4:10, 4:17, 8:9, 8:12, 20:22
**pen** [1] - 20:9
**people** [4] - 8:16, 9:22, 15:25, 16:3
**perhaps** [1] - 22:8
**periods** [1] - 12:25
**person** [2] - 4:11, 18:14
**person's** [1] - 9:11

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 26 of 28

**personal** [2] - 10:18, 10:19
**personally** [1] - 2:11
**persons** [1] - 3:22
**phone** [2] - 15:2, 15:3
**physical** [1] - 9:19
**pick** [2] - 11:10, 19:25
**place** [4] - 9:11, 11:17, 23:3, 23:6
**Plaintiff** [1] - 1:4
**plan** [5] - 2:16, 6:23, 12:16, 12:22, 13:11
**play** [1] - 6:17
**pleasure** [1] - 11:8
**point** [4] - 6:22, 11:14, 13:25, 22:9
**police** [1] - 15:19
**Police** [1] - 15:20
**policemen** [1] - 15:20
**pop** [1] - 13:4
**predated** [1] - 7:5
**prefer** [1] - 10:6
**prejudice** [1] - 7:14
**preliminary** [4] - 2:17, 3:16, 13:14, 13:20
**presence** [2] - 2:12, 20:14
**present** [3] - 2:11, 5:1, 6:4
**presided** [2] - 15:10, 16:16
**President** [1] - 15:25
**presumed** [2] - 19:2, 19:4
**pretty** [1] - 16:25
**previous** [1] - 9:14
**print** [1] - 23:4
**problems** [1] - 9:19
**proceed** [1] - 14:6
**PROCEEDINGS** [1] - 1:15
**proceedings** [3] - 22:18, 23:4, 23:6
**process** [1] - 21:22
**produce** [1] - 8:22
**profane** [3] - 17:20, 19:12, 19:15
**Professional** [1] - 15:9
**professional** [1] - 9:18
**project** [1] - 13:5
**promise** [1] - 9:20
**promptly** [1] - 20:12
**proof** [4] - 19:8, 21:13, 21:22, 22:7
**proper** [1] - 19:20
**properly** [1] - 16:13
**proud** [1] - 13:9
**prove** [3] - 19:9, 19:13, 20:24
**providing** [1] - 3:23
**provoke** [1] - 16:20
**Public** [1] - 1:12
**pull** [1] - 13:2
**purpose** [5] - 2:13, 3:23, 8:2, 14:11, 21:19
**pursued** [6] - 4:22, 15:17, 15:21, 15:23, 15:24, 16:2
**put** [1] - 13:25

**putting** [2] - 3:10, 13:10

## Q

**quarter** [1] - 22:12
**questions** [3] - 7:1, 7:9, 21:2
**quick** [2] - 11:21, 16:25

## R

**raise** [1] - 11:18
**Rapids** [5] - 1:10, 1:13, 1:18, 1:24, 23:14
**re** [2] - 14:10, 15:16
**re-address** [1] - 15:16
**re-read** [1] - 14:10
**read** [5] - 2:18, 13:13, 13:20, 12:23, 14:10
**Reade** [2] - 11:6, 23:3
**READE** [1] - 1:16
**reading** [1] - 2:17
**ready** [6] - 2:19, 8:8, 12:16, 14:1, 14:3, 22:13
**real** [1] - 12:8
**really** [4] - 7:14, 10:5, 20:21, 21:13
**reasonable** [2] - 19:10, 19:14
**rebut** [1] - 5:8
**receive** [1] - 4:2
**received** [1] - 15:8
**receiving** [1] - 7:9
**recess** [2] - 20:2, 22:16
**record** [3] - 11:5, 15:2, 23:6
**recorder** [1] - 9:25
**recording** [13] - 5:15, 6:23, 7:4, 7:8, 7:10, 7:13, 7:22, 14:19, 14:20, 14:22, 17:19, 17:20, 21:2
**recordings** [6] - 3:14, 3:20, 3:21, 3:22, 3:25, 7:17
**reduced** [1] - 23:4
**referenced** [1] - 10:11
**reflected** [1] - 5:17
**refused** [1] - 16:6
**regarding** [3] - 7:12, 8:1, 21:2
**rejected** [1] - 15:18
**related** [1] - 23:7
**relationship** [3] - 9:18, 10:18, 10:19
**relationship-type** [1] - 10:19
**relative** [1] - 23:8
**relevance** [1] - 21:7
**relevant** [5] - 4:9, 5:8, 6:10, 20:21, 20:23
**remember** [1] - 20:2
**reported** [2] - 1:19, 23:3
**reporter** [1] - 11:23
**Reporter** [2] - 1:20, 23:2

**reporting** [1] - 2:15
**reputation** [1] - 20:22
**required** [1] - 20:10
**respectfully** [2] - 4:3, 8:7
**Responsibility** [1] - 15:9
**responsibility** [1] - 11:23
**result** [1] - 6:12
**return** [4] - 17:3, 19:18, 19:19, 20:12
**RICHARD** [1] - 1:10
**Richard** [1] - 2:6
**rights** [3] - 4:22, 16:5, 16:6
**rise** [1] - 11:17
**risk** [1] - 7:14
**RMR** [2] - 1:23, 23:13
**RPR** [2] - 1:23, 23:13
**rule** [3] - 22:3, 22:4, 22:6
**rules** [1] - 22:5

## S

**S.E** [5] - 1:10, 1:12, 1:18, 1:24, 23:14
**satisfied** [1] - 16:12
**schedule** [1] - 12:21
**School** [1] - 12:5
**Scoles** [1] - 11:9
**screen** [1] - 13:5
**screens** [2] - 13:3, 13:6
**seated** [2] - 11:3, 11:20
**seating** [1] - 10:24
**seats** [1] - 12:23
**see** [8] - 9:3, 9:7, 13:1, 13:4, 15:2, 20:12, 22:11, 22:14
**seek** [1] - 7:8
**seeking** [1] - 21:1
**selected** [1] - 11:12
**selection** [1] - 11:10
**sell** [1] - 21:7
**send** [1] - 12:13
**sense** [2] - 18:17, 19:24
**sent** [1] - 7:3
**separate** [1] - 10:16
**service** [2] - 11:15, 19:6
**session** [1] - 12:12
**set** [1] - 23:10
**seven** [1] - 7:7
**Seventh** [4] - 1:10, 1:17, 1:24, 23:14
**several** [1] - 12:3
**short** [1] - 2:24
**Shorthand** [2] - 1:19, 23:2
**shorthand** [2] - 1:20, 23:4
**show** [1] - 18:22
**showing** [1] - 15:3
**shows** [1] - 17:14
**simplify** [1] - 7:19
**simply** [3] - 5:7, 5:18, 7:25
**Sioux** [1] - 13:8
**sit** [1] - 19:3

**sits** [2] - 10:3, 19:2
**sitting** [1] - 12:25
**situations** [1] - 10:5
**sold** [2] - 21:6, 21:8
**sometimes** [1] - 13:16
**sorry** [1] - 5:25
**sort** [4] - 5:5, 6:14, 7:23, 8:19
**sound** [1] - 10:13
**special** [1] - 18:8
**spill** [1] - 13:10
**spoken** [2] - 6:13, 6:20
**stand** [2] - 14:18, 14:22
**standpoint** [1] - 8:20
**start** [5] - 3:3, 12:14, 13:3, 13:13, 20:12
**started** [1] - 11:17
**state** [16] - 2:5, 3:24, 4:6, 4:8, 15:11, 15:12, 15:18, 16:15, 18:11, 18:13, 18:15, 18:16, 21:9, 21:12, 21:21, 22:2
**State** [1] - 23:2
**State's** [1] - 2:7
**statement** [5] - 14:4, 14:11, 14:14, 16:19, 17:6
**STATEMENTS** [1] - 1:6
**statements** [8] - 2:20, 9:25, 10:3, 14:1, 18:20, 18:22, 18:24, 19:23
**STATES** [2] - 1:1, 1:3
**States** [9] - 1:11, 1:23, 2:3, 2:7, 11:5, 14:4, 16:1, 20:15, 23:13
**Stephanie** [1] - 9:18
**still** [1] - 8:8
**Street** [1] - 1:12
**strictly** [1] - 8:2
**sued** [2] - 15:19, 15:20
**Suite** [1] - 1:12
**supervision** [1] - 23:5
**Supreme** [1] - 15:24
**surface** [1] - 13:2
**surrounding** [1] - 17:21
**surroundings** [1] - 13:7
**sworn** [1] - 11:19

## T

**tape** [1] - 4:23
**tat** [1] - 10:6
**tend** [1] - 22:3
**testimony** [6] - 7:11, 18:1, 18:11, 18:13, 18:16, 18:17
**THE** [30] - 1:1, 1:1, 1:15, 1:16, 2:2, 2:10, 2:23, 3:6, 3:8, 4:19, 5:4, 7:16, 7:20, 8:5, 9:1, 10:12, 10:18, 10:21, 11:3, 11:20, 12:7, 12:8, 13:24, 14:6, 17:5, 17:8, 19:22, 20:14, 21:24, 22:10
**theory** [5] - 5:1, 5:8, 5:20,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 1:15-cr-00077-CJW-MAR Document 91 Filed 04/15/16 Page 27 of 28

6:1, 9:3

**thereby** [1] - 5:19
**therefore** [1] - 5:24
**thinking** [1] - 22:5
**Third** [1] - 1:12
**thorough** [1] - 11:13
**threat** [16] - 4:7, 5:5, 6:7, 6:12, 6:19, 7:6, 9:10, 9:19, 17:12, 17:18, 17:25, 18:4, 18:24, 19:1, 19:17
**threaten** [5] - 16:20, 17:10, 17:15, 17:24, 19:16
**threatened** [1] - 16:11
**threatening** [4] - 8:11, 9:22, 16:22
**threats** [3] - 8:16, 9:9, 20:24
**throats** [1] - 16:14
**throughout** [1] - 19:4
**timeline** [1] - 2:25
**tit** [1] - 10:6
**today** [4] - 9:5, 12:18, 13:13, 13:19
**together** [3] - 2:14, 3:10, 13:14
**Tomlinson** [3] - 6:17, 6:24, 16:10
**tomorrow** [1] - 12:20
**tomorrow's** [1] - 12:20
**tone** [9] - 5:19, 6:13, 7:12, 8:2, 8:10, 8:11, 20:19
**totally** [2] - 5:22, 10:15
**toward** [1] - 6:15
**towards** [1] - 4:9
**track** [1] - 12:11
**transcript** [1] - 23:5
**Transcript** [2] - 1:21, 1:21
**transcription** [1] - 23:5
**treated** [1] - 16:2
**TRIAL** [1] - 1:15
**trial** [13] - 2:4, 6:22, 12:9, 13:13, 13:17, 17:13, 17:16, 19:4, 19:18, 22:17, 23:3, 23:4, 23:6
**trigger** [1] - 7:24
**true** [1] - 23:5
**truth** [2] - 3:25, 5:16
**try** [2] - 15:15
**trying** [3] - 7:18, 8:19, 13:10
**Tuesday** [1] - 5:23
**tweak** [1] - 3:11
**two** [1] - 7:25
**type** [2] - 10:6, 10:19
**typed** [1] - 3:17

## U

**U.S** [1] - 1:10
**Umsted** [3] - 3:10, 11:16, 12:3
**under** [7] - 9:3, 11:17, 22:2, 22:4, 22:5, 23:5

**understood** [1] - 4:11
**undertook** [1] - 15:14
**undue** [1] - 7:14
**UNITED** [2] - 1:1, 1:3
**United** [10] - 1:11, 1:23, 2:2, 2:6, 2:7, 11:5, 14:4, 16:1, 20:15, 23:13
**University** [1] - 12:5
**unlawful** [1] - 10:15
**up** [9] - 2:13, 9:25, 10:25, 11:25, 13:2, 13:4, 17:1, 19:25, 20:3
**upset** [1] - 15:13
**uttering** [1] - 17:22

## V

**value** [1] - 4:2
**variety** [1] - 12:10
**various** [2] - 3:22, 5:3
**verdict** [2] - 17:3, 19:20
**versus** [3] - 2:3, 11:5, 20:15
**view** [1] - 18:13
**viewed** [5] - 17:12, 17:18, 17:25, 18:23, 19:17
**voicemail** [18] - 6:8, 9:16, 14:23, 15:6, 15:8, 16:9, 17:10, 17:11, 17:15, 17:17, 17:22, 18:4, 18:23, 19:1, 19:11, 19:15, 21:3, 21:17
**voir** [2] - 6:21, 14:17
**VS** [1] - 1:5

## W

**wall** [1] - 9:25
**Washington** [2] - 6:8, 16:9
**waste** [1] - 11:14
**weapons** [1] - 10:2
**Wednesday** [1] - 5:24
**week** [1] - 5:17
**weight** [1] - 4:1
**welcome** [1] - 11:15
**WHEREOF** [1] - 23:10
**whole** [1] - 14:10
**wish** [2] - 13:24, 14:2
**wishes** [1] - 14:14
**witness** [4] - 8:15, 14:18, 14:22, 15:5
**WITNESS** [1] - 23:10
**witnesses** [1] - 14:12
**writ** [1] - 16:12
**writing** [3] - 13:1, 13:15, 13:18
**wrongs** [1] - 15:16

## Y

**year** [2] - 6:9, 18:2

**years** [5] - 6:5, 13:9, 18:20, 18:22, 18:24
**yesterday** [2] - 2:14, 2:25
**yourselves** [1] - 18:16

## Z

**Zane** [1] - 12:3

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
Case 1:15-cr-00077-CJW-MAR   Document 91   Filed 04/15/16   Page 28 of 28
*to purchase a complete copy of the transcript*